**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x

MICHAEL SMITH and JOHN O'MEARA, as
Trustees and Fiduciaries of the Local 966 Health
Fund,

                        Plaintiffs,

               vs.

BEDFORD STUYVESANT RESTORATION
CORPORATION,

                      Defendant.

**AFFIRMATION IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

**1:24-CV-04320-FB-LKE**

---------------------------------------------------------------- x

         I, Zachary Leeds, hereby declares as follows:

1.      I am an attorney with the law firm of Cohen, Weiss and Simon LLP ("Firm"), counsel to plaintiffs herein, and I am a member of the bar of this Court. I am fully familiar with the facts and proceedings herein.

2.      This action was commenced pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Labor Management Relations Act ("LMRA"), and state laws of contracts and fraud by the fiduciaries of a multiemployer benefits plan on June 18, 2024 with the filing of the summons and complaint. A copy of the complaint is attached hereto as Exhibit A.

3.      The defendant was served on September 4, 2024 via personal service. A copy of the affidavit of service on the defendant is attached hereto as Exhibit B.

4.      The affidavit of service was filed with the Clerk of Court on September 9, 2024.

5.      The time for the defendant, Bedford Stuyvesant Restoration Corporation ("Bed-Stuy"), to answer or otherwise move with respect to the complaint has expired.

6.    Defendant Bed-Stuy has not answered or otherwise moved with respect to the complaint, and the time for the defendant Bed-Stuy to answer or otherwise move has expired and has not been extended.

7.    The defendant Bed-Stuy's default has been noted by the Clerk of Court.  A copy of the Certificate is attached hereto as Exhibit C.

8.    Defendant Bed-Stuy is indebted to plaintiffs, Michael Smith and John O'Meara, on behalf of the Teamsters Local 966 Health Fund (the "Fund"), in the following manner:

(a) underpaid contributions for the months of April 2020 and November 2021 through May 2022, totaling **$3,910.00**, plus interest thereon;

(b) liquidated damages on the underpaid contributions in an amount equal to the greater of (i) interest on the underpaid contributions (totaling **$1,286.30** as of October 31, 2024) or (ii) twenty percent of the underpaid contributions (totaling $782.00);

(c) plaintiffs' attorney's fees and costs totaling $**34,350.50** as of the date of this affirmation;

(d) interest for late-paid contributions for the months of April 2020, July 2020 through December 2020, May 2021 through June 2021, August 2021 through September 2021, December 2021 through March 2022, November 2022 through December 2022, February 2023 through March 2024, in the amount of **$985.58** through October 7, 2024;

(e) delinquent contributions identified by an audit of the defendant, totaling **$99,925.00** ("Audit Contributions")**,** plus interest thereon;

(f) liquidated damages on the Audit Contributions in an amount equal to the greater of (i) interest on the Audit Contributions (totaling **$38,172.06** as of October 31, 2024) or (ii) twenty percent of the Audit Contributions (totaling $19,850.00);

(g) all other costs incurred by the Fund in collecting the contributions, including audit fees of **$2,954.25**, and costs, including the cost of filing of **$405.20**, and service of process costs pursuant to Fed. R. Civ. P. 4(d)(2)(A) in the amount of $**239.30**; and

(h) health benefit payments the Fund made on behalf of a former employee of the defendant based on the defendant's false statement that the former employee remained eligible for health coverage from the Fund, totaling $**458,724.80**.

WHEREFORE, plaintiffs Michael Smith and John O'Meara, on behalf of the Fund, request that a default judgment be entered in favor of plaintiffs and against defendant Bed-Stuy.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief, that the amount claimed is justly due to plaintiff, that no part thereof has been paid, and that the disbursements sought to be taxed have been made in this action or will necessarily be made or included in this action.

Dated: November 4, 2024          By: _____

Zachary N. Leeds
COHEN, WEISS AND SIMON LLP
909 Third Avenue, 12th Floor
New York, NY 10022
(212) 356-0265
zleeds@cwsny.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- ----  x

MICHAEL SMITH and JOHN O'MEARA, as
Trustees and Fiduciaries of the Local 966 Health
Fund,

                            Plaintiffs,

              - against -

BEDFORD STUYVESANT RESTORATION
CORPORATION,

                          Defendant.

------------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.:

## COMPLAINT

Plaintiffs Michael Smith and John O'Meara, as Trustees and fiduciaries of the

Local 966 Health Fund (the "Fund"), for their complaint allege as follows:

### INTRODUCTION

This is an action brought under the Employee Retirement Income Security Act of

1974, as amended ("ERISA"), the Labor Management Relations Act ("LMRA"), and state laws

of contracts and fraud to collect delinquent contributions and various other sums owed by an

employer to an employee benefit plan, including almost $500,000 in health benefits that the Fund

paid to a former employee of the Defendant based on the Defendant's false statement that the

former employee remained eligible for health coverage from the Fund.

### JURISDICTION AND VENUE

1.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

and 1367 and 29 U.S.C. §§ 185(a), 1132(a)(3), 1132(e)(1), 1132(f) and 1145.

2.       Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the Employer

resides in this district.  Venue also lies in this district under 29 U.S.C. § 185(a).

1

**THE PARTIES**

3.     Plaintiffs are Trustees and fiduciaries of the Fund within the meaning of 29 U.S.C. §1002(21)(A), as they have discretion and control over the assets and administration of the Fund.

4.     The Fund is an "employee benefit plan" and "multiemployer plan" within the meaning of 29 U.S.C. § 1002(3) and § 1002(37), with its principal places of business at c/o BeneSys, 7130 Columbia Gateway Drive, Suite A, Columbia, Maryland 21046.

5.     The Fund is jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5).

6.     The Fund is maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Local 966, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants, pursuant to the Fund's plan of benefits ("Plan").

7.     The collective bargaining agreements, the Plan, and the Trust Agreement set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Fund and that the Fund is a beneficiary of the collective bargaining and Trust Agreement terms.  Accordingly, the Trustees have legal right to bring suit under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1145.

8.     Bedford Stuyvesant Restoration Corporation (the "Employer") is a 501(c)(3) nonprofit corporation registered in New York and has place of business at 1368 Fulton Street, Brooklyn, NY 11216, and at all times relevant to this action, has been an "employer" within the meaning of 29 U.S.C. §1002(5) and the Trust Agreement.

2

9.      The Employer has at all times relevant to this action been party to collective bargaining agreements with the Union (collectively, and individually, the applicable collective bargaining agreements are the "CBA").

10.     The Employer contributes to the Fund pursuant to the CBA to obtain health coverage for its employees.

11.     The Fund is funded by employer contributions and is self-insured, meaning that all health claims are paid directly out of the Fund.

## FACTUAL BASIS FOR CLAIMS

The Collective Bargaining Agreements, the Trust Agreement, the Plan, and the Obligation to Contribute to the Fund and Report Covered Employees to the Fund

12.     Pursuant to the CBA, the Employer is bound by the terms and conditions, rules and regulations of the Trust Agreement and the Fund's Delinquency Collections Guidelines (the "Collections Policy").

13.     At all times relevant to this action, the CBA, the Trust Agreement, and Collections Policy have required the Employer to make contributions to the Fund on behalf of its employees who are covered by the CBA.

14.     Along with the contributions, the Employer is obligated to provide reports ("payroll reports") to the Fund that list each covered employee for whom contributions are made, thus verifying that the named employees are eligible to participate in the Fund's plan of benefits (the "Plan").

15.     The Trust Agreement, incorporated by direct reference in the CBA, and enforceable against signatory employers, provides that if the Employer fails to remit contributions by the date due, the Trustees, or other Fund representatives designated by the

3

Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled.

16.     The Trust Agreement requires that the Employer submit to periodic audits upon request of the Fund.  Specifically, Article IV, Section 4 of the Trust Agreement provides that "[t]he Trustees may, by their respective representatives, examine and audit the pertinent employment and payroll records of each Employer. . . ."

17.     The CBA requires the Employer provide payroll records and information to the Funds.  Specifically, Article 16, Section 4 of the CBA provides that "the payroll records or other pertinent data upon which such payments are made shall be open for inspection by the Fund upon demand."

18.     Pursuant to their authority under the Trust Agreement, the Trustees may initiate such legal or administrative proceedings, including arbitrations, as the Trustees, in their sole discretion, determine to be in the best interest of the Fund for the purpose of collecting such payments, money and property.

19.     In addition to any other remedies under the Trust Agreement and Collections Policy to which the parties may be entitled, an employer that does not make the required contributions promptly when due shall be obligated to pay interest on the monies due, at an annual interest rate of 12%, as determined by the Trustees, from the date when the payment was due to the date when payment is made, liquidated damages, audit costs, and attorney's fees and costs.

20.     Under the Trust Agreement, which is directly incorporated into the CBA, "Covered Employment" means employment of the Employee with an Employer.

4

21.     Under the Plan, "Employees of contributing Employers, whose employment is covered by the Collective Bargaining Agreement by and between Local Union 966 of the International Brotherhood of Teamsters and their Employer which requires contributions to be made to the Fund on their behalf, shall be eligible to enroll for coverage under this Plan."

22.     Under the CBA, contributions are due on behalf of employees "appearing on [the Employer's] payroll on the first day of each month following the completing of thirty (30) days of employment."

23.     The Fund relies upon the Employer's payroll reports to determine whether employees are working in Covered Employment and therefore eligible for benefits under the terms of the Plan.

24.     Article 9, Sections 1 and 3 of the CBA states that covered employees may receive up to five weeks of vacation time with the total vacation time given to the employee dependent on their length of service.

25.     Under Article 9, Section 3, each covered employee received two weeks of vacation, with one additional week awarded upon attainment of five, ten and twenty-five years of service, respectively.

Unpaid Contributions and Interest

26.     For the months of April 2020, July 2020 through December 2020, May 2021 through June 2021, August 2021 through September 2021, December 2021 through March 2022, November 2022 through December 2022, February 2023, and March 2023, the Employer paid contributions to the Fund late, thereby incurring interest on the late payments totaling $915.16.

27.     For the months of June 2020 and November 2021 through May 2022, the Employer failed to make contributions to the Fund at the rate established by the CBA, for a total underpayment of $2,860.00.

28.     To date, the Employer has not paid the amounts set forth in the preceding two paragraphs.

Payroll Audit

29.     Following the examination of the Employer's books and records for the period from January 1, 2020 to December 31, 2022 by the Fund's outside accountant (the "Audit"), the accountant issued a report reflecting that the Employer failed to report pay contributions due in the amount of $99,925.00 ("Audit Report").

30.     On February 16, 2024, the Fund through counsel sent the Audit Report to the Employer requesting payment.

31.     To date, the Employer has failed to pay any of the contributions identified by the Audit Report.

32.     The Employer is also obligated to pay interest on the contributions identified by the Audit Report, which amount has also not been paid.

Health Plan Benefits Provided to an Ineligible Individual

33.     As described above, health coverage is available from the Fund only to eligible individuals.  Pursuant to the CBA, the Employer is required to contribute only for "each employee appearing on its payroll on the first day of each month following the completion of the thirty (30) days of employment."

34.    The Employer submitted payroll reports to the Fund until November 2023 which stated that a former employee ("Employee")[1] was employed in Covered Employment with the Employer until October 13, 2023.

35.    The Employer's own payroll records however revealed that the Employee last performed work for the Employer on March 5, 2022.  The payroll records reflect that the Employee received one week of vacation time and one week of sick leave between March 5, 2022 and March 18, 2022, and the Employer treated them as on vacation from March 18, 2022 until June 10, 2022, totaling thirteen weeks of vacation time.

36.    The maximum amount of vacation time to which an employee is eligible under the CBA is five weeks. The Employee was therefore not eligible for vacation time later than April 30, 2022. Further, at no time after April 30, 2022 did the Employee return to work with the Employer.  The Employee is now deceased.

37.    Accordingly, under the CBA and based on the Employer's records, the Employee was not eligible for coverage from the Fund after April 30, 2022.   Further, upon information and belief, the Employer stopped remitting Union dues for the Employee in April 2022.

38.    Nevertheless, the Employer continued to submit payroll reports to the Fund, stating that the Employee was still working in Covered Employment and therefore eligible for coverage under the Plan until the November 2023 payroll report. In the November 2023 payroll report, the Employer listed the Employee as having been "terminated" on October 13,

---

[1] The Fund is not using the Employee's name in this Complaint for privacy reasons, but the Employer is aware of the name of the Employee.

2023, despite the fact that the Employee had not worked in Covered Employment any time after April 2022.

39.     Based on the Employer reporting to the Fund that the Employee remained eligible for coverage, the Fund treated the Employee as eligible for coverage and paid $458,724.80 in medical and prescription drug benefits on behalf of the Employee.

40.     On February 16, 2024, the Fund through counsel notified the Employer of this matter and have contacted the Employer multiple times since then.

41.     The Fund through counsel demanded that the Employer reimburse the Fund the $458,724.80 in benefits that it paid on the Employee's behalf as a result of the Employer's false reporting.

42.     To date, the Employer has failed to remit payment of the $458,724.80.

Audit Demand

43.     By this Complaint, the Fund seeks records to perform a payroll audit of the Employer for the period January 1, 2018 to December 31, 2019 and January 1, 2023 through the present.

44.     Plaintiffs seek all unpaid contributions identified by the audit.

Other Amounts

45.     On information and belief, additional contributions, interest, liquidated damages, and attorney's fees and costs will continue to become due and owing by the Employer to the Fund during the pendency of this action.

## COUNT I — ERISA

46.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

47.     Section 515 of ERISA, 29 U.S.C. § 1145, requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

48.     The Employer's respective failure to pay contributions, interest, liquidated damages, and attorney's fees and costs owing to the Fund violates the CBA, the Trust Agreement, and the Collections Policy which are incorporated into the CBA, and thus gives rise to an action under ERISA Section 515, 29 U.S.C. § 1145.

49.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce [Section 515] in which a judgment in favor of the plan is awarded, the court shall award the plan,
> the unpaid contributions,
> (a)     interest on the unpaid contributions,
> (b)     an amount equal to the greater of
>     (i)     interest on the unpaid contributions or;
>     (ii)     liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions],
> (c)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (d)     such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan….

50.     The Fund is thus entitled under ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2) to unpaid contributions, interest, liquidated damages, attorney's and audit fees and costs from the Employer.

## COUNT II – AUDIT DEMAND

51.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

52.    Under the terms of Article IV, Section 4 of the Trust Agreement and Article 16, Section 4 of the CBA, the Employer is required, upon the Fund's demand, to produce payroll records or other pertinent data upon which contributions are made.

53.    Therefore, the Employer is subject to an injunction ordering it to submit immediately to audits and is required to pay the contributions due according to such audits, interest, liquidated damages, audit fees, attorneys' fees, and costs.

54.    The Fund is thus entitled to the Employer's books and records for the period of January 1, 2018 to December 31, 2019 and January 1, 2023 to the present in order to perform a payroll audit, as agreed to in the Trust Agreement and CBA, and to any contributions found due and owing, as well as interest, liquidated damages, audit fees, and attorney's fees and costs.

## COUNT III – LMRA

55.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

56.    Section 301 of the LMRA, 29 U.S.C. § 185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

57.    Because the CBA and Plan condition enrollment upon eligibility under the terms of the Plan, reporting ineligible individuals as eligible for coverage under the Plan violates the terms of the CBA.

58.    Upon information and belief, the Employer submitted payroll reports and benefit payments representing to the Fund that the Employee was still working in Covered

Employment when the Employer was or should have been aware that the Employee had used the maximum vacation time, had not returned to work and was therefore no longer eligible for benefits under the CBA on and after May 1, 2022.

59.    By submitting inaccurate payroll reports and payments after April 30, 2022, the Employer reported ineligible individuals as eligible and therefore violated the CBA and the Trust Agreement incorporated into the CBA.

60.    The Fund is thus entitled under the CBA, Trust Agreement, and LMRA Section 301(a) to the $458,724.80 in benefits to which the Employee was not entitled.

## COUNT IV – FRAUD AS TO OVERPAYMENT

61.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

62.    New York law follows the elements for common law fraud, which are 1) a misrepresentation or material omission that was false and known to be false by the defendant, 2) made for the purpose of inducing the other party to rely upon it, 3) justifiable reliance of the other party on the misrepresentation or material omission and 4) injury.

63.    Upon information and belief, the Employer was aware that the Employee, who was no longer being paid by the Employer for Covered Employment, was no longer working in Covered Employment and therefore ceased to be eligible for coverage by the Fund no later than May 1, 2022.

64.    Upon information and belief, the Employer submitted the payroll reports and benefit payments representing to the Fund that the Employee was still working in Covered Employment.  Upon information and belief, this was done with the intent of causing the Fund to continue health insurance coverage for the Employee even though he was ineligible for such coverage.

11

65.     The Fund detrimentally relied on Employer's fraudulent reports and continued to provide health insurance coverage for the Employee.

66.     As a result of the Employer's fraudulent inducement, the Fund paid $458,724.80 in benefits to which the Employee was not entitled.

67.     Since the Employee's ineligibility for benefits and the fraudulent inducement was discovered as a result of the Audit and arises out of the same facts and circumstances of the federal claims in this action, the Court is authorized to exercise supplemental jurisdiction to the state law claims regarding the Employee as it is related to claims in this action within original jurisdiction such that they are part of the same case or controversy.

## COUNT V – BREACH OF CONTRACT AS TO OVERPAYMENT

68.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

69.     New York law requires the following elements for breach of contract claims: 1) existence of a contract, 2) performance under the contract, 3) breach of that contract, and 4) resulting damages.

70.     Under New York law, every contract includes an implied covenant of good faith and fair dealing which requires each party to a contract to act in good faith in the contract's performance and enforcement, which includes a duty to report information completely and accurately.

71.     Under the CBA and the Trust Agreement incorporated into the CBA by reference, the Employer was obligated to accurately report all eligible employees to the Fund.

72.     The Employer failed to accurately report when it included the Employee, an ineligible former employee, as an eligible employee, on its payroll reports to the Fund.

73.     The Employer's failure to remove the Employee from its payroll reports breached its duty to accurately report pursuant to CBA and resulted in significant proximate and foreseeable damages.

74.     Since the inaccurate reporting is in breach of the CBA, and the corresponding damages to the Fund were discovered as a result of the Audit and arise out of the same facts and circumstances of the federal claims in this action, the Court may exercise supplemental jurisdiction over the state law claims regarding the Fund's breach of contract claim insofar as they stem from the same operative facts and thus arise out of the same case or controversy.

75.     As a result of the Employer's breach its contractual obligations to provide the Fund with accurate payroll information, the Fund has erroneously paid out, and is therefore entitled to be repaid the sum of $458,724.80 corresponding to the benefits to which the Employee received but was not entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment:

76.     Ordering the Employer to pay to the Fund $99,925.00 in audit plus all other unpaid and underpaid contributions plus interest and liquidated damages thereon, as well as interest already incurred on late-paid contributions, and the Fund's attorney's and audit fees and costs;

77.     Ordering the Employer to repay the Fund the $458,724.80 in benefits that it paid on behalf of the Employee as a result of the Employer's misreporting;

78.     Ordering the Employer submit its books and records to the Fund to conduct a payroll audit for the period January 1, 2018 to December 31, 2019 and January 1, 2023

through the present and pay all contributions found due, plus interest and liquidated damages thereon; and

79.     Providing such other legal and equitable relief as the Court deems proper, including injunctive relief where warranted.


Dated: New York, New York
        June 18, 2024


_____
Zachary N. Leeds
Courtney Vice
**COHEN, WEISS AND SIMON LLP**
909 Third Avenue, 12th Floor
New York, New York 10022-4869
(212) 563-4100

*Attorneys for Plaintiffs*

14

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MICHAEL SMITH and JOHN O'MEARA, as Trustees and Fiduciaries of the Local**
**966 Health Fund**

CIVIL ACTION NO.: 1:24-CV
-04320-FB-LKE

**vs**                                              *Plaintiff*

**BEDFORD STUYVESANT RESTORATION CORPORATION**

*Defendant*

## AFFIRMATION OF SERVICE

The undersigned, affirms and says;

Undersigned is not a party herein, is over 18 years of age and resides in East Meadow, New York

That on **9/4/2024** at **4:49 PM** at **1368 Fulton Street, Brooklyn, NY 11216**

undersigned served a(n) **Summons in a Civil Action and Complaint**

on **Bedford Stuyvesant Restoration Corporation** ,

by delivering thereat a true copy of each to **Denise Bolton** personally, who stated that he/she is **authorized to accept service**
**thereof.**

Description of Person Served:
Gender : Female
Skin :  Black
Hair : Black
Age : 22 - 35 Yrs.
Height : 5' 4" - 5' 8"
Weight :131-160 Lbs.
Other :

I affirm on 09/05/2024 under the penalties of perjury under the
laws of New York, which may include a fine or imprisonment,
that the foregoing is true, and I understand that this document
may be filed in an action or proceeding in a court of law.

Juan Aguirre
License No.2119916

Serving By Irving, Inc. | 18 East 41st Street, Suite 1600 | New York, NY 10017
New York City Dept. of Consumer Affairs License No. 0761160

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x
MICHAEL SMITH and JOHN O'MEARA, as
Trustees and Fiduciaries of the Local 966 Health
Fund,

                Plaintiffs,

        vs.

BEDFORD STUYVESANT RESTORATION
CORPORATION,

             Defendant.

---------------------------------------------------------------- x

**CERTIFICATE OF DEFAULT**

**1:24-CV-04320-FB-LKE**

        I, Brenna B. Mahoney, Clerk of Court of the United States District Court for the Eastern District of New York, do hereby certify that the defendant Bedford Stuyvesant Restoration Corporation has not filed an answer or otherwise moved with respect to the complaint herein.  The default of defendant is hereby noted pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

Dated:_____Brooklyn_____, New York
             October 1, 2024

                        BRENNA B. MAHONEY, Clerk of Court

              By: _____Jalitza Poveda_____
                  Deputy Clerk